NOT FOR PUBLLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY


| | | |
|---|---|---|
| In the matter of | : | Case No. 05-42736/JHW |
| GB Holdings, Inc. | : | **OPINION ON MOTION TO SEAL EXHIBITS** |
| Debtor | : | |
| _____ | : | |

APPEARANCES:   Peter D. Wolfson, Esq.
Andrew P. Lederman, Esq.
Arthur H. Ruegger, Esq.
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020
Counsel for Debtor, GB Holdings, Inc.

Joel A. Yunis, Esq.
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York  10022-2585
Special Corporate Counsel for Debtor GB Holdings, Inc.

David S. Rosner, Esq.
Andrew K. Glenn, Esq.
Scott Bernstein, Esq.
Craig S. Hueneke, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019-6799
Counsel for the Official Committee of Unsecured Creditors

Charles A. Stanziale, Jr., Esq.
Jeffrey T. Testa, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey   07102-4079
Co-counsel for the Official Committee of Unsecured Creditors

Frank A. Merola, Esq.
Nathan A. Schultz, Esq.
Stutman, Treister & Glatt P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, California   90067
Counsel for Harbert Distressed Investment Master Fund, Ltd.

Nicole M. Nigrelli, Esq.
Jeffrey Kurtzman, Esq.
Klehr, Harrison, Harvey, Branzburg & Ellers LLP,
457 Haddonfield Road, Suite 510
Cherry Hill, New Jersey  08002
Co-counsel for Harbert Distressed Investment Master Fund, Ltd.

Stephen M. Yoder, Esq.
Neil B. Glassman, Esq.
The Bayard Firm
222 Delaware Avenue, P.O. Box 25130
Wilmington, Delaware 19899
Counsel for Robino Stortini Holdings, LLC,

Edward S. Weisfelner, Esq.
Brown Rudnick Berlack & Israels, LLP
Seven Times Square
New York, New York   10036
Counsel for Carl C. Icahn & Affiliates

Steven B. Levine, Esq.
Brown Rudnick Berlack & Israels, LLP
One Financial Center
Boston, Massachusetts  02111
Counsel for Carl C. Icahn & Affiliates

Eric A. Browndorf, Esq.
Cooper Levenson April Niedelman &  Wagenheim, P.A.,
1125 Atlantic Avenue
Atlantic City, New Jersey   08401
Co-counsel for Carl C. Icahn & Affiliates

Steven Wilamowsky, Esq.
Willkie, Farr & Gallagher, L.L.P.
The Equitable Center, 787 Seventh Avenue
New York, New York  10019-6099
Counsel for D.E. Shaw Laminar Portfolios, L.L.C.

Anthony Sodono, Esq.
Assistant United States Trustee
Office of the United States Trustee
One Newark Center, Suite 2100
Newark, New Jersey   07102
Counsel for the United States Trustee

The Official Unsecured Creditors Committee (the "Committee") moves here to seal three exhibits:  Exhibits "A", "B" and "H" to the Declaration of Andrew K. Glenn filed in support of the Committee's Objections to Debtor's Sales Motion.[1]   The Committee reflects that although it has no objection to making the exhibits public, the Committee is making the request to seal to accommodate the confidentiality concerns of the debtor-in-possession, G.B. Holdings, Inc.  The United States Trustee ("UST") opposes the request.

The first document sought to be sealed, Exhibit A, is a memo from Libra to the Independent Committee dated September 16, 2005, updating the Committee and the debtor about Libra's progress on the sale process.   The document described the level of interest evidenced by the prospective bidders contacted by Libra to purchase the debtor's ACEH stock.  As to this document, the motion to seal is moot, because the same document was publicly and electronically filed as Exhibit H to the Committee's Declaration of Andrew K.

---

[1]      The Committee's motion to seal other exhibits to the Declarations of Andrew K. Glenn has otherwise been resolved.

Glenn in Support of the Committee's Objection to Debtor's Retention

Applications (the "Update Memo").

The other two documents are Exhibit B, a transcript of the November 4,

2005 deposition of Gregory Bousquette, one of Libra's Managing Directors and

its co-head of Investment Banking, and Exhibit H, a transcript of the November

3, 2005 deposition of Joel A. Yunis, a partner of the Katten firm.  I conclude

that these materials do not constitute confidential commercial information

meriting protection under section 107(b).

American courts recognize "a strong presumption of public access to

court records." In re Orion Pictures Corp., 21 F.3d 24, 26 (2d Cir. 1994) (citing

Nixon v. Warner Commc'ns. Inc., 435 U.S. 589, 597-98, 98 S.Ct. 1306, 1312,

55 L.Ed.2d 570 (1978)).  The presumption for public access is rooted in the

public's First Amendment right to know about the administration of justice.

Public access "helps safeguard 'the integrity, quality, and respect in our

judicial system,' In re Analytical Sys., 83 B.R. 833, 835 (Bankr. N.D.Ga. 1987),

and permits the public to 'keep a watchful eye on the workings of public

agencies.' Nixon, 435 U.S. at 598, 98 S.Ct. at 1312." Id.

Public access to papers filed in the bankruptcy court is also codified in

the Bankruptcy Code.  11 U.S.C. § 107(a).  Section 107(a) of the Bankruptcy

Code provides that, "[e]xcept as provided in [Section 107(b)] . . ., a paper filed in

a case under this title and the dockets of a bankruptcy court are public records

and open to examination by an entity at reasonable times without charge."  11

U.S.C. § 107(a).

The Orion court noted that, "[a]lthough the right of public access to court

records is firmly entrenched and well supported by policy and practical

considerations, the right is not absolute.  In limited circumstances, courts

must deny access to judicial documents - generally where open inspection may

be used as a vehicle for improper purposes."  Orion, 21 F.3d at 27.  In addition

to the anti-identity theft provisions recently adopted in a new sub-section

107(c), the exceptions to public access to information are set out in section

107(b) as follows:

> (b) On request of a party in interest, the bankruptcy court shall,
> and on the bankruptcy court's own motion, the bankruptcy court
> may--
>
>> (1) protect an entity with respect to a trade secret or
>> confidential research, development, or commercial
>> information; or
>>
>> (2) protect a person with respect to scandalous or
>> defamatory matter contained in a paper filed in a case
>> under this title.

11 U.S.C. § 107(b).[2]  Thus, if the relevant information "fits any of the specified

categories, the court is required to protect a requesting interested party and

has no discretion to deny the application."  Orion, 21 F.3d at 27.


The Committee argues that the exhibits for which it seeks protection

constitute confidential commercial information.[3]   Commercial information has

been defined as information which would cause an "unfair advantage to

competitors by providing them information as to the commercial operations of

the debtor." In re Itel Corp., 17 B.R. 942, 944 (9th Cir. BAP 1982).


In In re Barney's, Inc., 201 B.R. 703 (Bankr. S.D.N.Y 1996), the debtors-

in-possession sought to keep both the identity of a proposed investor and all of

the terms of that investor's Preliminary Proposal Letter confidential.  Id. at 705.

The debtors claimed that this information, including the investor's demand for

$1 million in due diligence expenses, was "commercial information" protected

by section 107(b).  Id. at 706.  The debtors' counsel speculated that if the terms

of the letter were "publicized, other investors will submit only marginally higher

and better competing offers--rather than proposals reflecting their true

assessment of the debtors' value--to the detriment of the debtors and their

---

[2]       See also FED.R.BANKR.P. 9018.

[3]       Committee's Motion to Seal at 6-7.

estates." Id. at 707.


The court denied the debtors' motion for a protective order, holding that

neither the potential investor's identity nor the terms of the Preliminary

Proposal Letter were subject to the protection of section 107(b). Id. at 706–09.

The court reasoned that the information could not be sealed based on the mere

speculation by the debtor's counsel that the public disclosure of the content of

the letter would adversely impact the debtors's reorganization efforts. Id. at

708. Moreover, the information could not be sealed because debtors had put

their "talks with the Potential Investor in issue by seeking leave to pay that

undisclosed entity up to $1 million in estate funds against a promise only that

it will complete its due diligence." Id. at 709.


The Barney's rationale is applicable here. The two deposition transcripts

at issue relate primarily to the pre-petition connections between Libra, Katten

and the debtor, i.e., the Exchange Offer and Transaction and Libra and

Katten's efforts to sell the debtor's ACEH stock, including the due diligence

efforts of prospective buyers. The Committee agreed with the debtor to move to

seal the depositions in order to facilitate discovery. Apparently, the debtor's

concern, as evinced by its proposed counsel at the November 10, 2005 hearing,

was to not "chill the bidding [for debtor's ACEH stock] by indicating caps on

prices and things of that nature." T106-10 to 11 (11/10/05).  As in <u>Barney's</u>,

"mere speculation" that public disclosure of opinions about the value of the

debtor's ACEH stock, or of the identification of other bidders, or of negotiations

with the  Icahn interests or D.E. Shaw to become a "stalking horse", might

negatively impact on the proposed sale of the stock cannot invoke section

107(b) protection.  Moreover, the transcripts may not be sealed because the

debtor has placed in issue the subjects discussed at the depositions, including

the potential value of the ACEH stock at auction, and the pre-petition

connection of the Libra and Katten representatives to the debtor and related

entities.


      For these reasons, the Committee's motion to seal exhibits is denied.  An

order reflecting this ruling shall be submitted by Committee's counsel.


Dated:   December 20, 2005                  _____
                                            JUDITH H. WIZMUR
                                            CHIEF U.S. BANKRUPTCY JUDGE