NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In the matter of | : | Case No. 05-42736/JHW |
| GB Holdings, Inc. | : | **OPINION ON DEBTOR'S MOTION FOR ORDER AUTHORIZING** |
| | : | **ADVANCES FOR DEFENSE COSTS TO ITS DIRECTORS** |
| Debtor | : | **UNDER ITS D&O POLICY** |

APPEARANCES:  Gary M. Schildhorn, Esq.
Alan I. Moldoff, Esq.
Adelman Lavine Gold & Levin, P.C.
Suite 900, Four Penn Center
Philadelphia, PA  19103-2808
Counsel for Debtor, GB Holdings, Inc.

David S. Rosner, Esq.
Andrew K. Glenn, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY  10019-6799
Counsel for the Official Committee of Unsecured Creditors

Charles A. Stanziale, Jr., Esq.
Jeffrey T. Testa, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey  07102-4079
Co-counsel for the Official Committee of Unsecured Creditors

Anthony Sodono, Esq.
Assistant United States Trustee
Office of the United States Trustee
One Newark Center, Suite 2100
Newark, New Jersey  07102
Counsel for the United States Trustee

FILED
JAMES J. WALDRON, CLERK
September 21, 2006
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY:  s/ T. O'Brien, Judicial
Assistant to Chief Judge Wizmur

The debtor, GB Holdings, moves for an order authorizing the payment and advancement of defense costs on behalf of its directors under a Directors and Officers insurance policy ("D&O Policy"). The Official Committee of Unsecured Creditors has objected to the motion.

The debtor and its directors are defendants in an oppressed shareholder action that was filed, pre-petition, in the Chancery Court of Delaware ("Delaware Action") by a minority equity-holder of the debtor, Robino Stortini Holdings, LLC ("Robino"). The debtor's D&O carrier, National Union Fire Ins. Co. of Pittsburgh, is apparently providing the directors with a defense, but refuses to pay or advance defense costs absent an order from this court authorizing it to do so. Authorization for accrued defense costs and future defense costs in an amount not to exceed $75,000 is sought.

The debtor argues that its directors, as the "Insured Persons" under the D&O Policy, are entitled to the payment of their defense costs, because that is what the debtor bargained and paid for. The debtor further argues that: 1) sums payable under its D&O Policy for defense costs do not constitute "property of the estate"; 2) even if the debtor has a property interest in proceeds from the D&O Policy, its interest is subject to the contractual restrictions therein, i.e., the policy's directive that payment may be made on account of the

-2-

defense costs of the directors, and 3) if this court does consider such funds as property of the estate, debtor seeks to exercise its business judgment under section 363 to authorize the payment of limited and specified defense costs.

The Committee objects, asserting that: 1) the D&O Policy and the proceeds thereunder constitute property of the estate which should not be dissipated to pay the co-defendant directors' defense costs; 2) the debtor's decision to authorize the payment of the directors' defense costs does not meet the "entire fairness" or "business judgment" tests, and 3) the co-defendant directors should first seek indemnity from the debtor's controlling shareholder and secured lien-holder, American Real Estate Holdings, L.P., ("AREH"), under the terms of an Indemnification Agreement between AREH and certain of debtor's former and current directors.

The debtor's motion to authorize the payment and advancement of defense costs under the D&O Policy is granted. I conclude that the policy and its proceeds are property of the debtor's bankruptcy estate, that the debtor's interest in the policy proceeds is subject to the contractual terms of the policy, that the relevant policy provisions require advancement of defense costs, and that authorization of the payment of the directors' defense costs up to $75,000 will not materially impede the debtor's interest in the policy.

A.   "Property of the Estate"

Whether D&O insurance policies and their proceeds constitute property of the debtor's bankruptcy estate is governed by 11 U.S.C. § 541, which provides in pertinent part that property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case", 11 U.S.C. § 541(a)(1), and "[p]roceeds, product, offspring, rents, or profits of or from property of the estate", § 541(a)(6). The scope of "property of the estate" is interpreted broadly. United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S. Ct. 2309, 76 L.Ed.2d 515 (1983).

The Third Circuit recently confirmed that insurance policies constitute property of the estate under Section 541:

> It has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate. Estate of Lellock v. The Prudential Ins. Co. of Am., 811 F.2d 186, 189 (3d Cir.1987) (holding that an insurance policy is property of the estate within 11 U.S.C. § 541 even though the policy has not matured, has no cash surrender value and is otherwise contingent); see also Tringali v. Hathaway Mach. Co., 796 F.2d 553, 560 (1st Cir.1986); see generally 3-362 Collier on Bankruptcy ¶ 362.03 (15th ed. revised) ("[T]he prevailing view is that an insurance policy is property of the estate, protected by the automatic stay of § 362(a)(3).").

Acands, Inc. v. Travelers Cas. and Sur. Co., 435 F.3d 252, 260 (3d Cir.), cert.

denied, 126 S. Ct. 2291, 164 L.Ed.2d 833 (2006); see also In re Eastwind Group, Inc., 303 B.R. 743, 746 (Bankr. E.D. Pa. 2004) ("Because corporations pay for and own insurance policies, courts considering the question have concluded that the policies are property of the estate pursuant to 11 U.S.C. § 541(a)(1)."). As the "Named Entity" on the D&O Policy at issue here,[1] the debtor is the owner of the policy and is a named insured under Coverage B(I) of the Policy for Securities Claims. The policy is property of the debtor's bankruptcy estate.

As to the proceeds of the D&O Policy, Judge Raslavich of the Bankruptcy Court for the Eastern District of Pennsylvania, in Eastwind, framed the issue as follows:

> Such policies typically provide direct protection to the corporation's directors and officers. Indirect coverage is often afforded to the corporation for losses incurred indemnifying its principals. And some policies provide direct protection to the company (sometimes referred to as "entity coverage") for certain kinds of claims, e.g., violations of securities law. Some cases have held that such proceeds are property of the estate either because the debtor owns the policy, the debtor is a named insured under the policy, or because the estate would simply benefit from including the proceeds. Other cases focus less on the effect on the estate and more on the terms of the policy to determine if the proceeds are indeed property of the bankrupt.

---

[1] Under Endorsement 12 of the Policy, effective December 1, 2004, the "Named Entity" was amended from Ace Gaming, LLC to G B Holdings, Inc.

Eastwind, 303 B.R. at 746-47 (citations omitted).  A determinative factor appears to be the nature of the D&O policy.  For instance, where the policy provides the debtor with indemnity coverage that would potentially bring proceeds into the estate to avoid the diminution of estate assets, courts have concluded that such proceeds constitute property of the estate.  See, e.g., In re Circle K Corp., 121 B.R. 257 (Bankr. D. Ariz. 1990).  In contrast, where a policy names only the directors or officers as insureds, the proceeds may not be considered property of the estate.  In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1394 (5th Cir. 1987).  In Eastwind, the corporate debtor was covered to the extent it indemnified its directors and officers, and for losses resulting from securities claims.  In its capacity as a defendant in a complaint alleging violations of securities laws, the debtor (more specifically, the trustee, as successor to the debtor) "rightly claim[ed] an interest in the Policy proceeds." 303 B.R. at 748.

As in Eastwind, in this case, the debtor is covered directly for losses arising from a securities claim against the debtor, and for losses incurred in providing indemnification to its directors and officers for any wrongful acts committed by them.[2]  The debtor's directors and officers are also covered under

---

[2] Coverage B of the D&O Policy, as amended by Endorsement #2.

-6-

the policy for loss resulting from any wrongful act. The limit of liability for all covered losses under the policy, in the aggregate, including defense costs, is $15,000,000.00. The bankruptcy estate rightly claims an interest in the policy proceeds.

      B.    <u>Relevant Policy Provisions Require Advancement of Defense Costs</u>

The fact that the D&O policy and proceeds constitute property of the debtor's estate is not conclusive on the issue of whether the debtor's directors and officers may access the policy for defense costs during the pendency of the bankruptcy case. The debtor's right to receive proceeds, as well as the right of the directors and officers to the payment of defense costs, are subject to the contractual provisions and restrictions of the insurance policy. <u>In re Jones</u>, 179 B.R. 450, 455 (Bankr. E.D.Pa. 1995) (citing <u>First Fidelity Bank v. McAteer</u>, 985 F.2d 114, 117 (3d Cir. 1993)). The debtor's estate holds its property interest in the proceeds subject to the contractual state law rights governing all of the parties who hold an interest in the proceeds. <u>Id</u>.

The D&O Policy at issue here provides for four different types of coverage,

Coverages A, B, C and D. Only Coverages A and B are implicated here.[3]

Coverage A, or "Executive Liability Insurance", provides direct liability coverage to the debtor's directors and officers. Coverage B, or "Organization Insurance", provides direct liability coverage to the debtor for losses arising from Securities Claims such as the Delaware Action, and indemnification coverage for losses arising from a claim made against a director or officer of the debtor. As noted, the limit of liability for all losses in the aggregate is $15 million. Thus, both the bankruptcy estate and the debtor's directors and officers may look to the D&O Policy for applicable coverage.

The relevant contractual provisions of the D&O Policy include the Declarations Page and Paragraph 8 of the policy, governing defense costs. The Declarations Page asserts that:

> The insurer does not assume any duty to defend. The insurer must advance defense costs, excess of the applicable retention, pursuant to the terms herein prior to the final disposition of a claim.

---

[3] Coverage C, providing "Outside Entity Executive Liability Insurance," protects the debtor's directors and officers in their actions involving not-for-profit organizations. Coverage D, providing "Crisis Fund Insurance", protects the debtor in a variety of circumstances which may be "reasonably likely to cause a "Material Effect on an Organization's Common Stock Price." D&O Policy, App. B at 1.

D&O Policy, Dec. Pg.[4]  Paragraph 8 of the D&O Policy provides in pertinent part as follows:

> [a] Advancement and Repayment:  Under Coverages A, B and C of this policy, except as hereinafter stated, the Insurer shall advance, excess of any applicable retention amount, covered Defense Costs no later than 90 days after the receipt by the Insurer of such defense bills.  Such advance payments by the Insurer shall be repaid to the Insurer by each and every Insured person or Organization, severally according to their respective interests, in the event and to the extent that any such Insured person or Organization shall not be entitled under this policy the payment of such Loss.

Under the D&O Policy, the insurer is required to advance defense costs as the bills are presented, no later than 90 days after receipt.  If defense costs are within the retention amount, e.g., within the $150,000 retention, or deductible, for indemnifiable loss, and the debtor does not pay an applicable retention due to "Financial Insolvency", then the insurer is required to advance defense costs within the retention.  D&O Policy, p.8, ¶6.  In that event, the insurer is entitled to recover the amount of defense costs advanced within the retention from the debtor pursuant to the subrogation clause of the policy.  Id.[5]

---

[4]  The term "retention" refers to a deductible amount that the debtor is required to pay before the insurer's obligation to pay arises.  A retention amount is not applicable to non-indemnifiable losses under Coverage A.  A retention amount of $150,000 is specified for securities claims (Coverage B(I)) and $150,000 for all other claims.  D&O Policy, Dec. Pg. at 2, ¶¶ 4A and C.

[5]  It is noted that Paragraph 6 of the Policy requires the insurer to advance defense costs where the debtor does not pay an applicable retention due to "Financial Insolvency."  Under 11 U.S.C. § 541(c)(1)(B), a provision in an

The debtor has filed this motion on behalf of individuals who are either former or current directors of the debtor.[6] These directors collectively are accruing defense costs in connection with the defense of Robino's complaint in the Delaware Action, which could result in a covered "Loss" under the D&O Policy. The insurer is obligated to advance defense costs to its insureds to defend the claim. While it is recognized that amounts incurred in defense costs will reduce the limit of liability available to pay the debtor's potential claims under the D&O Policy, that fact alone cannot elevate the debtor's interest in the policy proceeds above the interest of the other insureds, the debtor's directors and officers. See, e.g., In re Gagnon, 26 B.R. 926, 928 (Bankr. M.D. Pa. 1983) ("[T]he estate's legal and equitable interests in property rise no higher than those of the debtor."). This is particularly so where the requested authorization of $75,000 toward defense costs is relatively inconsequential as compared to

---

agreement or transfer instrument "that is conditioned on the insolvency or financial condition of the debtor" is not enforceable to divest the debtor of an interest in property of the estate, or to modify such an interest. However, even if Paragraph 6 is not enforceable under section 541(c)(1)(B), Paragraph 8, requiring advancement of defense costs, is not conditioned on the insolvency or financial condition of the debtor.

[6] Robino named the following past and present directors as co-defendants to the debtor in the Delaware Action: Carl Icahn; Martin Hirsch; John P. Saldarelli; Michael L. Ashner; Harold First; and, Auguste E. Rimple, Jr. (Obj., Exh. C at 1.)

the $15 million cap on recoveries under the policy.[7]

    C.    <u>Indemnification from AREH</u>

I must reject the argument advanced by the objectors that the motion should be denied because the directors should first seek indemnification from the debtor's majority shareholder AREH, under AREH's Indemnification Agreement with certain of the debtor's former and current directors. In pertinent part, the Indemnification Agreement provides:

> An Indemnitee shall be entitled to request indemnification from the Indemnitor [<u>i.e.</u>, AREH] after pursuing any and all rights to indemnification from GB Holdings, and any insurance carrier which provides Director and Officer insurance to GB Holdings; <u>provided however that</u>, such insurance policy has failed to provide the necessary payments to such Indemnitee for a period of at least 60 days, following a request for indemnification; <u>further provided that</u>, in the event that such Indemnitee receives an insurance payment after requesting, and receiving, indemnification from the Indemnitor, such Indemnitee shall promptly reimburse the

---

[7] It is also recognized that an act to diminish future recoveries from the debtor's insurance policies may be violative of the automatic stay under 11 U.S.C. § 362(a)(3). The Third Circuit recently so held in <u>Acands</u>. "The possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies." <u>Acands</u>, 435 F.3d at 261. In <u>Acands</u>, an arbitration award entered after the debtor filed a bankruptcy petition, which reduced substantially the extent of coverage available to the debtor under its insurance policies, was vacated on the ground that the award was entered in violation of the automatic stay. The issue is not implicated here, because, in effect, the debtor's instant motion to authorize payment of defense costs constitutes a quest for relief from the stay to permit the payment to be made.

>Indemnitor in the amount of such insurance proceeds.

(Obj. Exh. A at § 2) (emphasis in original).

The Agreement requires the debtor's directors and officers to first seek coverage for defense costs from the D&O Policy, which is exactly what they have done. The insurer has not denied coverage, but merely seeks an appropriate order from this court authorizing the payment. The directors and officers do not have a basis to seek coverage from AREH under these circumstances.

I conclude that the debtor's motion to authorize payment of the defense costs of the debtor's directors and officers up to $75,000 is granted. This decision is without prejudice to further requests to pay defense costs, or to apply the proceeds of the D&O Policy to claims or losses asserted against the debtor or the other insureds under the policy.

The debtor's counsel is directed to submit an order in conformance with this opinion.

Dated:   September 21, 2006

_____
JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT